IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05-cv-01009-EWN
Criminal Action No. 02–cr–00040–EWN

UNITED STATES OF AMERICA,
    Plaintiff-Respondent

v.

JOE HIGHTOWER,

    Defendant-Movant.

**ORDER DENYING PENDING MOTIONS**

Defendant Joe Hightower was charged, in a Superseding Indictment (Doc. 58), with drug and firearms offenses. Ten counts (1 through 10) charged possession with intent to distribute cocaine base, commonly called "crack" cocaine. Two counts (11 and 12) charged possession with intent to distribute cocaine hydrochloride. Count 13 charged possession of methamphetamine with intent to distribute it. Count 14 charged possession of a firearm in furtherance of a drug trafficking offense, while count 15 charged possession of a firearm by a previously-convicted felon.

With the agreement of both parties the court severed the felon-with-a-gun charge before commencement of trial (Doc. 62). At trial, the court granted Defendant's motion for a judgment of acquittal on count 14 on the ground that the Superseding Indictment failed to specify which drug charge was the predicate offense for the firearms possession charge. The jury returned a

verdict of not guilty on the methamphetamine charge (count 13) and verdicts of guilty on all twelve cocaine-related charges (1 through 12). After the jury verdicts were returned, Defendant entered a plea of guilty to the felon-with-a-gun charge. The court sentenced Defendant to a 319-month prison term. The Tenth Circuit affirmed the judgment. *United States v. Hightower*, 94 Fed. Appx. 750 (10th Cir. 2004).

The matter is now before the court on Defendant's motion to vacate his sentence, filed pursuant to 28 U.S.C. § 2255 (Doc. 220). Defendant subsequently filed a number of related motions on grounds similar to those raised in his section 2255 motion. They include a motion to alter or amend judgment (Doc. 229), a motion for new trial (Doc. 235), and a motion for discovery (Doc. 236). The court will address the section 2255 motion first, since the other motions are variations on the themes raised in the section 2255 motion.

In support of the section 2255 motion to vacate the court's judgment and sentence, Defendant makes five claims. First, he alleges that he received ineffective assistance of counsel, primarily because discovery violations by the Government placed counsel in a position where he was not prepared for trial. Somewhat confusingly, Defendant sprinkles this ineffective-assistance-of-counsel claim with smatterings of his remaining four claims. The second claim alleges the giving of perjured testimony and other misconduct by FBI Special Agent Todd Wilcox, in connection with warrants for Defendant's house and his vehicle. The third claim is that the plea agreement under which he entered a guilty plea to the felon-with-a-gun charge is somehow invalid because of the court's dismissal of the other gun charge, possession of a firearm in furtherance of a drug crime. The fourth claim is that the Government improperly

2

failed to deliver to Defendant's counsel materials useful in impeaching the Government's witnesses, in violation of *Giglio v. United States*, 405 U.S. 150 (1972). The fifth and final claim is that the court erred in calculating his sentence, primarily by engaging in judicial fact-finding violating *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

As a preliminary matter, the court concludes that the second, third, fourth, and fifth claims are procedurally barred because they were not presented during the direct appeal of his conviction. While ineffective-assistance-of-counsel claims can be raised in a section 2255 action, *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995), the remaining claims could, and should, have been raised on direct appeal. Ordinarily, "[s]ection 2255 is not available to test the legality of matters that should have been raised on direct appeal." *United States v. Walling* 982 F.2d 447, 448 (10th Cir. 1992), *citing United States v. Khan,* 835 F.2d 749, 753 (10th Cir.1987). Defendant's failure to raise these claims in his direct appeal bars review unless he can show cause and resulting prejudice. *Id. See also United States v. Frady*, 456 U.S. 152, 167-69, 102 S.Ct. 1584, 1594- 95 (1982) (defendant must show cause and prejudice to obtain collateral review where there was no objection at trial). Having reviewed Defendant's reply (Doc. 230) to the Government's submission (Doc. 226), the court concludes that has made neither showing.

The court is also of the view that the second, third, fourth, and fifth claims have no substantive merit. To reiterate, the second claim asserts that the case agent, Agent Wilcox, engaged in misconduct to obtain search warrants, including the giving of perjured testimony. This contention appears to be baseless. Defendant's allegation of perjury is based on (1)

perceived discrepancies between Agent Wilcox's affidavits submitted in support of the search warrants, his testimony at the suppression hearing, and testimony of *other* witnesses at trial and (2) an alleged prejudice toward Defendant arising from the fact that Agent Wilcox was the case agent in a previous case where the court suppressed certain wiretap evidence. This claim must fail, for multiple reasons. First, the court finds that the testimony, though somewhat confusing, was not contradictory. Second, mere discrepancies between the testimony of one witness and another do not prove that one or the other of the witnesses was lying. Third, without more persuasive or specific evidence of perjury, the existence of a motive to lie adds nothing to Defendant's claim. There is simply nothing to support any suggestion that Agent Wilcox knowingly gave false information to obtain any search warrant, and Defendant's bare assertion and speculation to the contrary are not sufficient.

The remaining allegations of agent misconduct are similarly unavailing, and this court so found in ruling on the motions to suppress. Although Magistrate Judge Shaffer initially declined to issue a warrant for Defendant's house on the ground that there was insufficient probable cause to support the search, Magistrate Judge Boland later did issue such a warrant, but only *after* new information was developed during execution of the earlier warrants and a general protective sweep of Defendant's house. This court found (and continues to believe) that failing to tell Magistrate Judge Boland of the earlier warrant (if that had even happened) was irrelevant, because new, sufficient information supported a finding of probable cause to issue the warrant to search Defendant's house.

In his section 2255 motion, Defendant adds some new allegations of agent misconduct. The allegations are palpably without merit. The new allegation that Magistrate Judge Watanabe recused himself because of an improper approach by Agent Wilcox is sheer speculation. A second allegation is that Agent Wilcox necessarily lied when he said that materials seized in the earlier search of Defendant's car had tested positive for cocaine base. Defendant argues that this was false, because the materials had not then been tested by the chemists who later testified at trial. Defendant misunderstands what the agent was saying. His affidavit testimony and hearing testimony simply was that the "suspected" crack cocaine had undergone preliminary testing.

Defendant's third claim defies logic or rational characterization. It relates to the two charges involving firearms, counts 14 (possession of firearm in furtherance of a drug felony) and 15 (felon-with-a-gun). The contention is that the guilty plea on count 15 is somehow invalidated by the court's judgment of acquittal dismissing count 14. An accurate chronological recitation of events demonstrates that the court's and the parties' decisions concerning the firearms counts *benefitted* Defendant at every turn. First, with the agreement of both parties, count 15 was severed from the rest of the counts for trial. This was to avoid potential jury prejudice from evidence about his previous felonies, including drug felonies, in a trial of the remaining new charges. If Defendant thinks this severance meant that count 15 could not later be tried separately, he is mistaken.

Second, the court entered a judgment of acquittal dismissing count 14 for the technical reason that the Superseding Indictment did not charge which of the various drug felonies was the predicate crime for the firearms charge. Again, the decision greatly benefitted Defendant, since

5

it eliminated a charge which carried a mandatory consecutive sentence. The technical ground for dismissing the charge did not undermine the legal or factual basis for the severed felon-with-a-gun charge.

Third, the plea bargain for count 15 was decidedly in Defendant's favor. The evidence on the count (which the court had heard at trial) was overwhelming, yet defense counsel managed to extract from the Government a promise to dismiss the Government's previously-filed information seeking enhancement of sentences on the drug counts because of Defendant's prior drug felonies. *See* 21 U.S.C. § 851. Defendant essentially gave up nothing, because his sentence was driven entirely by the drug convictions; count 15 played no part.

For now. the court will skip over the fourth claim, alleging failure by the Government to disclose *Giglio* evidence for witness impeachment, because the claim requires some factual development and is closely related to Defendant's primary argument about the effectiveness of counsel. The fifth claim is that the court erred in various ways in determining Defendant's sentence, primarily by engaging in judicial fact-finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Contrary to the Government's position, the question does not involve retroactive application of *Apprendi* because *Apprendi* had already been decided before trial of this case and was considered by this court in formulating jury instructions. This court's practice, in the uncertain sentencing environment which followed *Apprendi*, was to instruct juries that drug quantity (here, more than five grams of crack cocaine) was an element of the crime which the Government had to prove to the jury beyond a reasonable doubt. The court followed that practice in this case. (*See* Doc. 161 at 855–56.) (transcript of jury instructions). Thus, consistent

with *Apprendi*, the jury had determined beyond a reasonable doubt that Defendant had possessed more than five grams of crack cocaine, the statutory predicate for a mandatory minimum sentence. Moreover, as an additional precaution in imposing sentence, the court explicitly considered all of the sentencing directives contained in 18 U.S.C. § 3553(a) (Doc. 190 at 9). The court's sentence — 319 months — represented a downward departure at Defendant's request. The court, having considered this claim and the other claims regarding sentencing (which repeat arguments already rejected), sees no basis for affording relief on the fifth claim.

The court now returns to the fourth claim in support of the motion to vacate Defendant's conviction — that the Government withheld *Giglio* material. This claim requires some factual unpacking. The Government built this case, in large part, on controlled purchases of drugs from Defendant. These purchases were "controlled" in the sense that they were made by one of three confidential informants to whom Defendant was willing to sell because he knew them well and did not suspect that they were undercover officers or that they were working with undercover officers. Their names were Rosalyn Parker, Joyce Howard, and Barbara Graham. The purchases were also controlled in that the informants wore equipment to record the drug transactions and surveillance officers watched and videotaped the transactions. The testimony of the informants was subject to impeachment because they had prior records, had been offered favorable deals for their cooperation, and/or were being paid for each drug purchase.

The *Giglio* material in question consisted of impeachment information concerning the informants. There was considerable procedural jockeying with respect to the time for producing this *Giglio* material, and the court considered the procedural issues at a hearing held on May 7,

7

2002, roughly one week before trial. (Doc. 201.) Defendant, of course, wanted all available impeachment information, including information from which he might be able to develop still more ammunition for impeachment. The Government did not want to furnish names, social security numbers, FBI numbers, or other identifying information, because it wanted to continue use of the informants. It feared that disclosure of such information would compromise the informants. Although the Government recognized that it would need at some point to disclose the information if the case went to trial, it was trying to avoid trial by offering not to file an information seeking enhancement of Defendant's sentence because of his prior drug convictions, in exchange for which Defendant would enter guilty pleas to one or more of the then-pending charges. The *Giglio* material was related to this plea-bargaining issue, in that the Government wanted to withhold the material until Defendant had decided whether he wished to go to trial. If he refused the Government's offer, the Government proposed to file the sentence-enhancing information and simultaneously disclosed the informant-identifying information.

Although Defendant's section 2255 motion quotes extensively from the hearing of May 7, 2002 (Doc. 201), including his attorney's vigorous argument concerning the Government's attempted leveraging of the *Giglio* material and this court's expression of concern about the lateness of the production, he fails to persuade this court that the Government *thereafter continued* to withhold *Giglio* material. In fact, the court finds, from the record in the case, that the Government did, after May 7, 2002, disclose the material in question to defense counsel, for several reasons. First, the sentence-enhancement Information was filed May 10, 2002 (Doc. 99). It is a fair inference that plea-bargaining had ceased and that the case was headed to trial. From

the Government's previous representations that it was withholding identifying information about the informants only until trial appeared certain, the court believes it a fair inference that the Government probably turned over this *Giglio* material on or before May 10, 2002.

The inference that the Government did, in fact, turn over *Giglio* material is bolstered by other circumstances. First, even though the court had all but invited the filing of a motion to continue trial or a motion for sanctions for discovery violations (Doc. 201 at 30, 33), the court heard nothing about the failure to produce *Giglio* material after May 7, 2002 — until Defendant resurrected it in his section 2255 motion. The court continues to believe that the silence tends to support an inference that the material had been furnished. Second, other filings in the case strongly suggest that the Government had complied with *Giglio*. After the case was concluded and Defendant had filed his section 2255 motion, the Government filed a motion (Doc. 231) asking that the court order defense counsel to return *un-redacted* criminal histories of the confidential informants. The Government represented that counsel "does currently possess" such material and expressed concern that the information was "of a sensitive nature, such as Social Security numbers, the addresses of residences, dates of birth and other identifying information." The court denied the motion, solely because Government counsel had failed to meet and confer with defense counsel before filing the motion (Doc. 232).

When the court denied the Government's motion seeking return of un-redacted criminal histories, defense counsel promptly forwarded them to Defendant. Defendant thereafter filed them as attachments in support of his motion for a new trial (Doc. 238). The attachments are the most compelling evidence that the Government met its *Giglio* obligations. Defense counsel's

9

letter of November 18, 2005 (Doc. 238, Attach. 3) recited that he was sending un-redacted criminal records of two informants, Roslyn Parker and Barbara Graham, plus "additional records" concerning them. He also sent Defendant a 25-page investigative report. This report was "a background investigation of Howard, Graham, and Parker" and defense counsel assumed that he had it "close in point of time to the date shown on the face of it," May 9, 2002 (Doc. 238, Attach. 5). Although Defendant has chosen to omit the material concerning Barbara Graham and Joyce Howard, the remaining attachments clearly demonstrate that defense counsel possessed (1) all the un-redacted criminal history of Roslyn Parker and (2) a summary sheet showing all payments made to Rosalyn Parker for Defendant's case (Doc. 238, Attach. 2, 4).

Because of the circumstances recited above, the court finds that the Government met its *Giglio* obligations in this case. There remains a question as to whether the production was sufficiently timely to permit its effective use and whether defense counsel did, in fact, use it effectively. The court now will consider these questions in connection with the main issue properly presented in a section 2255 motion — whether Defendant received effective assistance of counsel.

Defendant's first claim in his section 2255 motion — ineffective assistance of counsel — is evaluated under *Strickland v. Washington*, 466 U.S. 668 (1988), and its progeny. "Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (citations and internal quotation marks omitted). In order to prevail on a claim of ineffective assistance, Defendant

must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, and that (2) counsel's performance prejudiced him in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. When reviewing an ineffective assistance of counsel claim, the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Guided by *Strickland,* the court proceeds under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689). Strategic decisions of trial counsel are ordinarily shielded from charges of ineffectiveness. "'Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting *United States v. Ortiz Oliveras,* 717 F.2d 1, 3, (1st Cir. 1983). "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision [of counsel] . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Hatch*, 58 F.3d at 1459 (quotation omitted).

This deference to an attorney's strategic trial decision will stand unless the decision itself was objectively unreasonable. *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). But

"[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

As noted at the outset, Defendant mixes his claim concerning the ineffectiveness of his counsel with the remaining four claims which the court has already rejected. Except for the claim concerning late production of *Giglio* information about informants, the complaints about counsel's handling of the underlying claim may be disposed of summarily. Concerning counsel's alleged failure to expose the perjury of Agent Wilcox, the court finds (1) that there was no perjury, for reasons already stated, and (2) that counsel's submissions concerning the legality of the various searches in the case (the only question to which Agent Wilcox's testimony or behavior was pertinent) was vigorous, extensive, and effective (*e.g.*, Docs. 33, 40) and adequately revealed the agent's conduct to the court. Concerning sentencing, the court finds (1) that the issues which Defendant now seeks to raise lack merit, for reasons already stated and (2) that counsel vigorously litigated sentencing questions at every appropriate point, objecting to many aspects of the pre-sentence report (Docs. 154, 168, 174), seeking additional discovery for sentencing (Doc. 162), moving for a downward departure (Doc. 164), supplementing and developing his previous sentencing submissions (Doc. 173), and appearing at three hearings concerning sentencing (Docs. 178, 186, 184). Concerning the guilty plea to the felon-with-a-gun charge, the court finds that counsel was fully effective in obtaining dismissal of the sentence-enhancement information in exchange for the guilty plea, a result very favorable to Defendant.

While the claim premised on the Government's late disclosure of *Giglio* material is more problematic, the court is of the view that the record in this case establishes that counsel was fully effective in his performance and that Defendant did not suffer prejudice as a result of any action or omission by counsel. As noted earlier, the court is satisfied, contrary to Defendant's persistent assertion, that the Government did disclose *Giglio* material. It is clear, however, that it did so less than one week before trial. As of approximately May 9 (the Thursday before the Monday trial) it appears that counsel had a 25-page investigative report concerning all three informants from his private investigator. He also had (1) the un-redacted criminal records and (2) a sheet showing payments made to Rosalyn Parker for Defendant's case.

Having reviewed the transcripts of defense counsel's cross examination of all three informants (Doc. 159 at 382–434 [Barbara Graham]; Doc. 159 at 512–548 [Rosalyn Parker]; Doc. 160 at 596–606 [Joyce Howard]), the court finds counsel's performance to be fully effective and to belie the Defendant's present assertions that the Government had not disclosed *Giglio* information. Concerning Barbara Graham, counsel placed before the jury the fact that she had used at least 27 aliases, that she had supplied false information concerning her identifying information, and that she had been paid in excess of $4,000 for her work in the case. In addition, counsel went through a long list of her arrests and convictions, something which he must have gotten from the Government or through investigation undertaken based on the Government's disclosures.

With respect to Rosalyn Parker (the only informant whom Defendant mentions in his section 2255 filings), defense counsel identified specific aliases which she had used and

13

established that she had falsified other identifying information. Again, this appears to be something which he must have gotten from the Government or through investigation undertaken based on the Government's disclosures. He established that she received favorable treatment in some pending cases in exchange for her cooperation in Defendant's case. He established her previous felony convictions. Finally, he established at several points that she had been paid for her work in Defendant's case. Although Defendant now makes much of the fact that counsel did not use the payment summary (Doc. 238, Attach. 2) to pin her down as to specific amounts, counsel obviously had the total summary before him when he suggested to her that she had received over $7,000, to which she responded that she did not know (Doc. 159 at 535). The court regards the omission to go over specific amounts as a tactical decision which could have been made for any of several reasons — perhaps because her evasive answer to his suggestion was sufficient to make the point to the jury and taking more time with the summary would not add to the presentation.

Finally, with respect to Joyce Howard, defense counsel established that she had prior criminal convictions involving deceptive conduct, that she became involved in Defendant's case to obtain favorable treatment for an ex-boyfriend, and that she had received money for purchasing drugs from Defendant. Defendant points to nothing more that counsel should have done. The court finds counsel's performance to have been competent and effective.

The court is also of the view that Defendant has failed to sufficiently allege how he as prejudiced by any actions or omissions of counsel. As mentioned earlier, the Government had ample evidence for convictions, aside from the informants' testimony. The drug purchases were

14

carefully controlled. Each informant was searched for drugs or money before she met with Defendant. She was given a certain sum of marked money to give Defendant. Officers watched her during the transactions. She wore an audio device to record conversations with Defendant. The transactions were recorded either by camera in the possession of surveillance officers or cameras mounted on public property adjacent to Defendant's place of business. Given the strength of this evidence, the court believes the jury would have returned the same guilty verdicts, even absent the testimony of the informants. Defendant's allegations of ineffectiveness thus fail the "prejudice" prong of the *Strickland* test.

As mentioned earlier, Defendant has also filed a number of other motions. They include a motion to alter or amend judgment (Doc. 229), a motion for new trial (Doc. 235), and a motion for discovery (Doc. 236). The court, having reviewed all these motions, concludes that they repeat issues raised in the section 2255 motion and that they are all untimely. Based on the discussion of issues raised in the section 2255 motion, they will all be summarily denied.

For the reasons discussed herein, it is

**ORDERED** that the motion to vacate Defendant's conviction and sentence (Doc. 220), the motion to alter or amend judgment (Doc. 229), the motion for new trial (Doc. 235), and the motion for discovery (Doc. 236) are all DENIED. The motion (Doc. 252) to clarify the court's previous procedural order (Doc. 240) is DENIED as moot. The clerk will close this file.

Dated this 25th day of September, 2008.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge